IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

November 23, 1998

Cecil Crowson, Jr.
Appellate Court
Clerk

WESTWOOD GROUP PARTNERSHIP,  )  ROANE CIRCUIT

)  C.A. NO. 03A01-9805-CV-00155
)
      Plaintiff-Appellee  )
)
vs.  )
)  HON. RUSSELL E. SIMMONS, JR.
)  JUDGE
)
DAVID L. MOORE, M.D.,  )
)
      Defendant-Appellant  )  AFFIRMED AND REMANDED

BARBARA W. CLARK, Moore & Clark, P.C., Knoxville, for Appellant.

DAIL R. CANTRELL, Cantrell, Pratt & Varsalona, Clinton, for Appellee.

O P I N I O N

McMurray, J.

This appeal involves a commercial lease dispute between the Westwood Group Partnership (the landlord) and Dr. David L. Moore (the tenant). Each party sued the other for breach of the lease agreement. After a bench trial, the trial court ruled that the tenant breached the lease by not paying the rent, and awarded the landlord rent payments, late fees and attorney's fees in the total

amount of $5,390.00.  The tenant appeals this ruling.  We affirm the judgment of the trial court and agree with the appellee that this is a frivolous appeal.

In November of 1994, the parties entered into a lease agreement whereby the tenant agreed to lease certain property in Roane County.  The term of the lease was from January 1, 1995 through January 1, 1998, "unless terminated sooner or extended as provided herein."  The lease provided for rent in the amount of $800 per month for the year 1995, and further provided that "for each calendar year thereafter for the duration of this Lease Agreement, the rent shall increase by an amount not to exceed six percent (6%) per year."  The lease provided a late fee of forty dollars "in the event any installment of rent is paid more than Twenty-five (25) days late."  The lease also provided that in the event of litigation, "the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee."

In 1996 the rent increased to $848 per month, which the tenant apparently paid without incident.  In 1997 the rent increased to $898 per month.  The landlord presented the testimony of Ms. Janie Alcorn, its co-owner and manager.  Alcorn testified that the tenant paid $848 in January and February of 1997.  The tenant paid the

2

additional $100 due for those two months after the landlord's attorney sent him a letter requesting payment. Alcorn testified that the tenant sent $848 for rent in March, April and May of 1997. He stopped paying rent altogether in June.

On June 10, 1997, the tenant sent a letter which stated, "We have contacted you many time [sic] regarding the air conditioner not working and you have refused to repair it. You leave us no choice but to stop paying rent until it is repaired." On June 30, 1997, the landlord sent the tenant a termination letter, citing the tenant's "constant failure to pay the proper rent and late fees." The letter provided the tenant with sixty days to vacate the property. The tenant vacated the property on September 1, 1997.

The tenant argued at trial that the landlord refused to repair the air conditioning unit, leaving it unbearably hot in the building, which he used for a medical clinic. The lease provides the following regarding air conditioning: "Lessor agrees to provide for purchase and installation of suitable hvac and appropriate ducting, thermostat(s), and registers required to keep said office space comfortable according to Federal heating and cooling guidelines." The tenant testified as follows regarding the air conditioning unit:

3

It has never been able to cool that office to any degree that on the hot days it would not be detrimental to some of our patients' health. And I have sent a letter. I have had Sharon call them on multiple occasions. They have been in there. They have agreed that it's hot. And they have refused to repair it.

The tenant testified that since the landlord would not repair the unit, he called Craze Brothers Heating and Air himself to have it repaired. The tenant stated that he paid Craze Brothers' bill for fixing the air conditioning.

The tenant presented the testimony of his employee, Ms. Sharon Price, who testified that the air conditioning would go down on hot days, that it was very hot in the office, and that they called Craze Brothers on several occasions. Price testified that she called the landlord's beeper number on several occasions, and one of the owners would call back within two hours. She stated that on one occasion an owner came to the office, looked at the unit and suggested that they change the filter. Price did not testify that any of the owners ever refused to have the air conditioning fixed.

Alcorn testified that the tenant called on several occasions complaining about the air conditioning. She further testified as follows:

Q: Okay. And what did you—what did you do after they called you about the air conditioning?

4

A:    We always went over there.  Either my
      husband or my sister or somebody else
      would go over there.  And we always
      called air conditioning people, and they
      would come immediately.

Q:    Who are the air conditioning people?

A:    Craze Brothers in Oliver Springs.

Q:    When you went over to examine the air
      conditioning system, what did you see?

A:    Most of the time, my husband would check
      it.  And they would have a filter that
      had been in there for months, and it
      would be clogged up.  And so that left
      the air conditioning not being efficient,
      not cooling efficiently.  So once you
      changed the filter, then everything
      works.

The landlord presented the testimony of Terry Craze, owner of

Craze Brothers.  Craze testified that they were called approxi-

mately three times to work on the air conditioning system.  He

stated that the first time was in June of 1996.  On that occasion,

the only problem with the system was a dirty filter.  Craze

testified the second time they were called, there was no power to

the system because of "a blown fuse in the relay, transformer."

After they "spliced the fuse link and turned the air back on,"

there were no further problems.  On the third occasion, they found

a burned-out transformer.  Craze further testified as follows:

Q:    Okay.  Tell me a little bit about the
      system installed in the leased premises.
      Can the system that's installed there

5

handle the square footage for that building?

A: Yes, sir, it can. That is a two and a half ton air conditioning system. Approximate square footage of that building is around 1200 square feet. That two and a half ton system should handle up to 1500 square feet.

Q: Mr. Craze, are you at all familiar with the Federal Heating and Cooling Guidelines?

A: Somewhat.

Q: Do you know whether your professional expertise in that building meets the Federal Heating and Cooling Guidelines?

A: Yes, it does.

                *     *     *     *

Q: Did the defendant and his agents or employees ever tell you anything that they did with that air conditioning system that in your professional opinion could have hurt it?

A: The girls instructed me that they were turning the air conditioning completely off at night and then bringing it—turning it back on during the daytime sometimes.

Q: How would that affect a[n] air conditioning system—this air conditioning system?

A: It would cause a load on the building depending on what time they turned the air conditioning system back on. If they turned it on when it got to a warm point of the day, it would cause it to overwork the system.

6

Finally, Craze testified that the landlord paid all of the Craze Brothers' bills for repairing the air conditioning, and that to his knowledge, the tenant had not paid any of the repair bills.

The landlord also presented the testimony of Ms. Renee Ruffner, who leased a portion of the same building leased by the tenant and was his next-door neighbor. She testified that she was in the clinic frequently, and that her son went to the clinic weekly for allergy shots from May through July of 1997. She testified that there was never a time that she went into the tenant's leased premises when it was uncomfortably warm. She testified that she never heard anyone complain about the heat, and that she did not have problems with her heating system.

From our review of the record, and the conflicting testimony outlined above, it is clear that the resolution of this case turns almost entirely upon determinations of the credibility of witnesses. "Where the issue for decision depends upon the determination of credibility of witnesses, the trial court is the best judge of credibility, and its findings will be given great weight." Gotwald v. Gotwald, 768 S.W.2d 689, 697 (Tenn. App. 1988). "On an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and

7

convincing evidence to the contrary." <u>Tennessee Valley Kaolin v.</u> <u>Perry</u>, 526 S.W.2d 488, 490 (Tenn. App. 1974).

Obviously, the trial court found the landlord's witnesses more credible than those presented by the tenant. We defer to the trial court's assessment of credibility. Even without an assessment of credibility on our part, we find that the evidence clearly preponderates in favor of the trial court's conclusion that the landlord promptly had the air conditioning repaired each time it was notified of a problem, and that the tenant breached the lease by not paying the proper amount of rent in timely fashion.

The appellee-landlord argues that this appeal should be judged frivolous and it should be awarded the costs of defending this appeal. In <u>Liberty Mutual Ins. Co. v. Taylor</u>, 590 S.W.2d 920, 922-23 (Tenn. 1977), the Supreme Court responded to an appellee's request for a finding of a frivolous appeal as follows:

> We agree with appellee that the appeal had no reasonable chance of success. The material issues raised by the appeal were issues of fact and there clearly was material evidence to support the trial judge's findings on those issues.

The <u>Taylor</u> court's description of that appeal could fairly be applied to the present appeal with equal accuracy.

The judgment of the trial court is affirmed in its entirety. The case is remanded with instructions to ascertain and award the appellee its reasonable costs associated with defending this appeal.

_____
Don T. McMurray, Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Herschel P. Franks, Judge

```
                     IN THE COURT OF APPEALS
                         AT KNOXVILLE
```

WESTWOOD GROUP PARTNERSHIP,    )    ROANE CIRCUIT
                               )    C.A. NO. 03A01-9805-CV-00155
                               )
        Plaintiff-Appellee     )
                               )
vs.                            )
                               )    HON. RUSSELL E. SIMMONS, JR.
                               )    JUDGE
                               )
DAVID L. MOORE, M.D.,          )
                               )
        Defendant-Appellant    )    AFFIRMED AND REMANDED

**<u>JUDGMENT</u>**

This appeal came on to be heard upon the record from the Circuit Court of Roane County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was no reversible error in the trial court.

The judgment of the trial court is affirmed in its entirety. The case is remanded with instructions to ascertain and award the appellee its reasonable costs associated with defending this appeal. Costs of the appeal are assessed to the Appellant.

                         PER CURIAM